Good morning gentlemen. Good morning. My name is Malcolm L. and I'm counsel for Ms. Esther Watson who is the appellate in this matter and she is present today behind my left shoulder. First, I extend an appreciative thank you for giving her the opportunity to argue this case and I likewise do the same. Let's get started. May I please the court. The issue we're dealing with today is whether the school board has provided legitimate non-discriminatory reasons for not selecting appellant for principalship in Winsboro Elementary School. Now to give you a little background information, two words pretty much sum up my client. A lifelong educator. She began teaching in 1973 through 1994 as a teacher in Catholic Parish. From 94 to 01 she was a principal in Catahoula Parish. From 01 to 08 she was a child welfare specialist in Catahoula Parish and from 08 to 2018 she was an assistant principal in Winsboro Elementary School which is in Franklin Parish. Well for the 17, I think the 17-18 year school year the principal retired. She finished that year out as the principal and that following summer she applied for the position. Went through the interviewing process, scored the best what I would say a very impressive resume to the testing process, I mean the screening process. If you look in brief I quoted her requirements and she's pretty much qualified for just about every position except the gen. We've read the, you know, we're up to speed on, not cutting you off from the argument, but trust me we're up to speed on, you know, the brief and you know her prior tenure, etc., having retired, having come back, etc. So we're there in terms of that so I might just suggest you hone in on, you know, where the rubber, where the tension is. I'm not telling you not to tell us, but I'm just saying, you know, we were very, having said it, for all argument, as opposed to not, you know, we're familiar with, you know, kind of. Well the issue is whether or not the school board has provided legitimate non-discriminatory reasons for not selecting my client. The reasons they provided was, number one, she did not live in the parish and number two, they stated that she was retiree returned to work and it was feared she would not be in the position long. There were two sub-issues that were brought into the discussion and there were some alleged testing irregularities and some disciplinary irregularities that were supposedly mentioned to the superintendent and that was addressed. So we take the position that living in the parish is not a legitimate non-discriminatory reason. Ever? In this, and I wouldn't say never, but in this particular instance, it wouldn't be. Catahoula and Franklin Parish are neighboring parishes, roughly about 30 minutes away. As you see here in Orleans Parish, it's commonplace for folks to commute. There are definitely, I mean, the records seem to be she'd done her job perfectly, no one complained from nearby and certainly living in Orleans Parish, people commute. What will help me most though is just any law that would suggest that an employer cannot rely on that because that's pretext and I say that because residency restrictions are pretty common in public employment. So what's your, I really would love it because I definitely know the facts, but I'd love to know why it is we have to assume that wanting your principal to have kids in the school and be right there for an emergency somehow is actually pretext for race discrimination. Well, one thing I will say is when you look at the criteria that was to be used in selecting principal, the superintendent testified that he disregarded it. I'm just asking for your best case to support the proposition that either never proximity to job or for some reason here it isn't a legitimate non-discriminatory reason. I really don't have a case on dealing with that issue there. The brief covers the issues, but the case you rely on primarily is Patrick versus Ridge. That's correct. That's not a race discrimination case, that's not a pretext case. That's correct. Okay, so what happens, well there is a second reason, which was actually the first given by Dr. Johnson, which is, well, she's coming out of retirement. Yes. Do you have a case on that one? I don't, but I can expound on it. Yeah, I know. Okay, go ahead. Okay, the law back then allowed teachers to enter what they call the drop program. You retire, then you immediately come back to work. So, and the way the law was set up then is a teacher could legally retire and then go back to working and getting two checks. That's simply what she did. Right. Well, we're begging them to do that now. Yes, yes. But again, wouldn't it be legitimate for the superintendent to say, gee, what are your future plans? Are we about to have to find a successor for you? And I agree with you 100%. There was no discussion along those lines. I understand when the selection process occurred, a committee met, interviewed the selectee and my client. They then gave those two names to the superintendent. He didn't interview anyone. He just didn't make a selection. So, you're correct. Had there been some sort of discussion, yes. Had my client said, you know what, I'm only going to do this for a couple more years. My health is failing. I got grandchildren I want to attend to. I understand that, but that did not occur. And then that kind of dovetails to whether or not this smacks of age discrimination. I could see if they had that conversation. That conversation was never had. So, to sit here and just presuppose that you're not going to be here long, that's problematic. You know, whenever you're presenting a legitimate non-discriminatory reason, the record must support that. That was not a part of the record. Well, they gave these reasons, right? One is residency proximity. The other is arguably, if we accept them, that they don't want to have to find another principal tomorrow. Yes. So, now, but then the burden shifts back to you to say, well, those may be valid in the abstract, but they aren't here. Either one of them. I don't believe they're here. I know, but in your supporting case for us at that prong of the McDonald-Douglas framework. Oh, well, I'm relying upon Rich. The Rich case, the Martinez case. Okay. You have to take your argument where you want to go, but wouldn't, isn't it correct that you would prevail separately if the district court erred seeing no dispute of evidence as to whether she's more qualified or clearly more qualified? Yes, I believe so. That would be a separate reason to reverse. Yes. And you're, you've pressed that. Yes. Okay. And what did the district court say about that? Well, the district court said just because a person has good qualifications does not necessarily mean that they're the best person for the job. And I understand that. We all know individuals who look great on paper, but who are a trained, reckoned person. Yeah. In this scenario, my client presented a laundry list of qualifications. One that she was even qualified to be superintendent. The selectee was a newly minted individual who qualified to be a principal. I think the record showed he got his qualifications in June and was given the principalship in July. Despite the fact that my client had been as the assistant principal in that position for eight years. And I will point to the court that she took an F school to a B school. She was getting the job done. Yeah, that's quite impressive. But of course, she was not selected. She remained one year with the new principal. And as a record bears out, the school is now an F school. Now, as for qualifications, the selectee did have an appropriate education. He did have the master's. But in comparison to what the appellate brought to the table, to me, it was just, it was just, it was just no comparison. What's of the listing that you heard is decidedly better qualified, do you pinpoint most? Is it the master's plus 30? Is it the additional degrees at the time as assistant principal as compared to the other person? I can't remember. He had a degree in administration or something. I don't have it right in front of me. I'm just saying, honing in on your clearly best qualified factors. I think the fact that she was a principal from 94 to 94 to 01, and the fact that she was an assistant principal from 08 to 18, and she qualified to be superintendent in 01. So she was no doubtably more qualified than the selectee in this situation. I'm not saying that he wasn't worthy of a position, but given who he was competing against, Mr. Plotkin should have been awarded the position. So, and, you know, when you look at, you know, and there were two other issues that they mentioned that I want to flesh out to the court. One was some testing irregularities and some discipline problems. Well, those incidents were both documented by the school board, I mean, by the LEA, but that documentation is not a part of the record. That was an opportunity for the school board to say, hey, you had some problems. You did this wrong, but you didn't. Now, we know about it. We have the documentation, and if you look at page 500 through 512 of appellant's deposition, she'll explain to you the discipline, and as for the testing irregularities, we can give you facts on that, but it's not of record because the school board is not a part of the record. It was the school board's duty to amplify those, those allegations, but it refused to do so. Yes. . . . . . . . . . It's just a question. An explanation. It has to still has to be legitimate non-discriminatory and legitimate is a very key word. Legitimate legal proper supported. I don't think anything has been provided by the school board does any of those to me. It's just a reason he provided that sounded good and was convenient. So I guess from our perspective, they have not yet crossed that threshold and since they have not crossed that threshold. We're not required to provide any pretextual evidence to rebut that. Does that answer your question? Yeah, I'm not trying to tell you with the argument. You have a rarities of rarities where we give all argument on one. Yeah, so you got the light. I'm just gives the opportunity while you're there to say the most the best because otherwise many cases we just read what's in the brief. So something beyond that fine, but I get your point and that's responsive. That's all I wasn't trying to trick you or ask you something that's off the gourd. You'll have an opportunity Council on the other side is going to come up and give those and you'll have rebuttal if they say something different. That's all but it wasn't meant to be a trick question at all. Well, I think when you look at the facts, I think the Ridge case supports us and also Martinez case is very helpful in this case. Okay. All right. Well, I think we have your All right. Thank you, sir. All right. Thank you. Melissa Lodge on behalf of the Franklin Parish school board a couple of points that I realize that you've read the understand all of that and I don't want to rehash all of that, but a couple of points that I want to make is with respect to her status as a retiree return to work. It's not the issue as well as the issue of her residency. Both of those things together went to the question of how long is she going to remain in the district? But if one of them is you'll remember your question. You'll remember your question. I might have forgotten mine. All right, if you know, they knew her status is having previously retired. So, you know when she applies if there was a concern about how long she might not serve and why wouldn't that be just a non-starter? Okay, we're in the applicant pool not going to consider people who you know, they've retired. They're out because any of them might have the potential of only serving the short term. So I guess my question is if it wasn't an inhibitor for being in the pool, having previously retired then once getting to the selection point, why does it take on more prominence at that point? You follow my question? Yes, absolutely your honor. And that's a good question. And I understand where you're going with that. Um, but it will first off when she was hired in the parish after she retired. She was hired as an assistant principal not as the leader of the school. Secondly, by the time we got to this position, the other piece of this that I hadn't gotten to yet was her employment history prior to coming to Franklin Parish and before she retired. Ms. Watson had worked in Catahoula Parish, which is her Could you just answer the question? I think the judge he he he is asking why would they even get to an interview? If coming out of retirement is an obstacle. I understand. I apologize. I misunderstood. I think that was the question. My apologies. I'm interested in that too. What's the answer to that? Thank you. It was not a requirement to live in the parish. That's never been a requirement. There are people who work. I'm not being angry, but it's not the proximity just time. He's asking you about the retirement block. Correct. It's not a requirement that someone be live in the parish or that they it's not a requirement that someone not going to hire. Is that your maybe I was getting choked. I'm glad. The question is if one of the reasons given for the non-hire is concerned about if we hire her, she may only be here for a year and we've got to do this over again. I mean, I'm paraphrasing. My question is when she applied and however other number of people may have applied. If there were people in that pool similarly situated as having taken drop and out of the pool arguably the concern about how long will they work could be there. So I could concede the board says, well, we're not going to consider any people in this lot because we hire any of them. They could retire at any time. So I'm simply asking that condition was not prohibitive from her applying and getting to be a founds. So if when it's time to actually pick the person that's one of the reasons she's not hard. I'm simply asking why does it take on more privacy? At that stage than it has from being in the pool in the first place. If it's really a non-protective reason. Do you understand me? Yes, I understand and there is no requirement that someone be in a certain status of their retirement or that they live in the district when they apply for a position or when they're interviewed. They were both qualified. We have never argued that she was not qualified. But the way the interview process works is they get whittled down in the interview process. And what went to the superintendent was the two that they thought were were the two best of the candidates. And so it was with that information that Superintendent Johnson had to determine. Okay out of these two who is going to be my better selection. His concern was based on as far as his concern about length of time that she would remain. There was multiple issues that went into that. It was her fact that she was not might retire. She had already retired and she had returned back to work. Does it add is it problematic at all or lend argument to pretext that if I'm not mistaken, he came out of retirement and then was superintendent for 15 years. Correct. Yes. So then he turns around and says but she can't do that. It but but there was more to it than that. It was she but if that's invalid, here's a separate legal question. If one of the reasons he gave and that was his first reason actually is inconsistent with his own life story. Does that mean we've got a remanded even if we acknowledge that proximity and residency can be valid. In other words, if it's invalid to say to somebody, I'm not going to hire you because you're probably going to go right back to retirement. I don't see that it's necessarily inconsistent. He himself testified in his deposition. I don't plan on being here very much longer and I'm here because they asked me to be here something along those lines. He was there 15 years after coming out of retirement. I believe so. I believe so. I can't say with any certainty, you know, of any age discrimination case where an employer can say you don't get this job because you're about to retire. No, no, and that is not the reason why he said you're not going to get this job. The reason why he said she was not the reason why he thought the other candidate was more qualified was because she was in that status. She was she lived in Catahoula Parish plus she had worked her entire 35-year career. But if quote in that status meaning you're old is age discrimination. Then we wouldn't do plus we would say illegitimate invalid. And my question is does that mean the separate reason can stand alone? Or do you have a case that says an employer can say I'm not going to hire you because I think you're going to retire. So then it's problematic. It's what's the case that says that's a legitimate reason. I do not have a case that says that that's a legitimate reason but the legitimate reason is not her status as a retiree returning to work. The legitimate reason is I've got two candidates who can I assume is going to stay in this position for the long term and based on those factors as a whole not singly. If that would have been it I would argue. Yeah, then maybe maybe this was a problem, but it wasn't it was the entirety of the situation that Dr. Johnson was looking at not just that one factor. So I don't think that they can be separated it out in that way because the issue you would agree to me. Let's imagine. This is a her argument is one of age discrimination and the employer says well, I didn't hire you because you're too old. I didn't hire you because you're black. We would never say that invalid reason counts at all. It doesn't get a plus. It's wrong. Of course. Okay. So here isn't it wrong to say to somebody one of the things I'm thinking about is you're awfully old. You might retire again and I'm just asking can that ever be a valid reason in combination with others or alone. I think not if you're looking at it from an age standpoint, but he was not looking at it from an age standpoint with in education a person is eligible to retire at 20 years. So they and they can come back to work now as my counsel stated they they can come back. She came back to work under the old law. Well under that law, she's able to collect her entire retirement as well as earn her salary today. She would only be able to go back and be a teacher but at that time or in a critical shortage area. What helps us from both sides. You can see is any law from any court saying this is actually a legitimate reason. Can you give me any law that supports taking into consideration closeness to retirement? It's legitimate to turn somebody down for a job. Not in a vacuum. No, you're on. Well, what do you mean not in a vacuum? Is it in your brief is in your head? You just don't know of any law to support the reason. Dr. Johnson gave I'm not aware of any cases that specifically state that but again, the reason is not retirement. The reason is not her age. It's all of those factors taken together and I would like to speak a moment to the point of her return to Catahoula Parish and the potential in his thought process. The way he testified was yes. She was a retiree return to work so that she may not be in the position long-term. She still lives in Catahoula Parish where she's always lived and she worked her entire 35-year career until she did retire in Catahoula Parish and when she was in Catahoula Parish, she had a higher position than a principalship. She left Catahoula and retired as child welfare and attendance supervisor when she came to Franklin Parish. She served as an assistant principal for one year and then Mr. Ronald Lofton who also had been her superintendent in Catahoula Parish. Came to Franklin Parish as a principal and he asked that she be placed under him and Dr. Johnson did that he transferred her over there when he left. It was Dr. Johnson thought well, he's leaving. She's kind of followed him throughout her career. Is it is she going to remain here? Is she going to go back to Catahoula Parish and finish out her career where she began? And to end within one year after that not that it's not that with the ultimate outcome is the issue but a year after that she did return to Catahoula Parish. She worked in her obligatory position of a teacher as for one year because I don't I don't think it's relevant to look what either of them did later on. So I'm totally separate question. You heard us asking opposing counsel. How can it possibly be on this record that there's no issue of fact as to whether or not Miss Watson is more qualified than the individual is picked. When you when we're looking at the comparison side by side of the resumes one is much longer obviously now. I think it's pretty well settled that years of experience are not necessarily going to make someone clearly more qualified. She did have more years of experience for that and that's not I mean, let's pause about that 25 years of experience. Every single position you can have in a school, right? She taught she's an administrator. She's even an assistant principal. Yes. He's just been a teacher for years. Yes. So sounds to me that one's more qualified. Well, they had the same educational background and it just experience. She's had every single job and that's sort of what you'd expect a principal to have. He has but even she when it in her career her first position after being a teacher was a principal. So to say that you can't have the requisite. I'm just comparing the two the district where it says not even an issue of fact that someone that's been doing every job in the school for 25 years is more qualified. It's not even an issue of fact than the person who's only been a teacher never had administrative duties. That's not even debatable. Well, let me say this this entire case started it's been all over the place. I mean it it started with the person selected was not at all qualified and then it was that's not an issue. My question is to I think you've been in my guess is you been in the school system and familiar with them for a long time. You're saying to me someone that has been in the system and had every single role for 25 years. It's not even an issue of fact as to whether she's more qualified to be a principal deal with all aspects of the school than the person who has only been in the classroom. That's what you're saying. What I'm saying is that in this instance there was she she had more experience. So if you want to call that more qualified, maybe you can call that more qualified. But was she clearly better qualified? I think that is where the question but you don't dispute that. She also scored higher on the interviews. Correct slightly higher on the energy. So that's the second factor third factor. You don't dispute. She took what he just represent us and have school to a B school. I mean this lady is quite remarkable. I'm sorry. Do you dispute any of the points that I've said that all I'm saying make me wonder is there an issue of fact that she's more qualified one is experience. The other one is the interviews. That's usually pretty important to applicants. She does score. You said a little higher and the third thing is do you dispute that? She took a school from F to B. Well, and there was some there was actually some question and some concern about if there's question and then we've got an issue of fact. And it was testified by Lanny Johnson that one of the things that was in his that he considered was some issues that had been raised with testing irregularities while they were while she and Mr. Lofton were in the were were serving at that school and there was concerns with that that with those testing irregularities how valid with these scores and this was an Department of Education raised. It wasn't just someone saying hey, I think they came in and actually did an audit. They didn't find specific wrongdoing, but they did say that that there needed to be a more a tightened up method of doing things on top of that. There was the decline in disciplinary action in school discipline went down which on its face seems like that might be a good thing that they're doing something, right? But in reality the child welfare and attendance Department in Franklin Parish was coming in and saying hey, there are kids that should be receiving disciplinary write-ups and they're not so we think this information about the school is viewed as well. So while that wasn't the only issue it was an issue where those were issues that were considered looking at the resumes and that that side-by-side you're correct about the experience and I would wholly agree with you that she has an impressive record. You know, we would all agree with that. Dr. Johnson would agree with that and you agree in the interview. She scored higher slightly higher. Yes, but what did Dr. Johnson say this other white male was superior to her for what just give me the record his statement that he said this guy is superior for this reason because what number one he was he had recently gotten his Masters in leadership. So he had a specialized degree in in school leadership, you know, he didn't have experience experience. He did have a specialized degree. And he thought that he would remain in the position for the long term and that was an important consideration for him. So, you know, and that's what's in the record that that's what he testified to those two things that those two things the Masters in leadership and back to the longevity issue. So this really comes down to the Masters in leadership that degree. She had a heck of a lot of certifications to write. Yes, but I would point out that yes, you had a number of certification all school related, right? All school related, but not suppose got to look at is school functions, but not school leadership related. I mean there was PE and I'm just thinking off the top of my head now granted. Those are all important things to know but number of certifications did not does not necessarily mean someone is more qualified for a position. Now, was it the right decision? Maybe not. I mean if we if I was sitting on that committee may or if I was dr. Johnson would that have been my selection? I don't know possibly not but the question is was it legitimate to him and was it was it legitimate and length of time in a school and potential length of time in the school is a valid legitimate non-discriminatory reason age was not a part of it. And in fact, it was never even raised until now. So, you know, that was never an issue. The posture of the case is up on summary judgment, you know at the end of a fact-finding if a jury or somebody else agreed, you know with the bottom line and say well she made her best case and they disagreed but on the summary judgment, you know, we're supposed to construe the facts and the like most favorable to the non-movement albeit that this is, you know, in a in a discrimination context. And so counsel opposite and I say well all that may be true, but it's summary judgment which in effect is saying your client was entitled to judgment quote as a matter of law that there's no genuine issue material fact and the question Judge Higginson was asked sound like percolating fact disputes. We get your side on the facts. So the question is how do we not discern from this that there are some disputes, you know about some of these issues a jury or somebody else might agree with your client, but how you title the summary judgment as a matter of law based on what's here and that's that's my question. What's your best case that as a matter of law the summary judgment you're entitled to because most of what you've just argued has been about, you know, facts, the qualifications, yada yada. It just seems like it's got a lot of facts going on. What's the closest case for you? I think probably maybe Oliver where they talked about experience not being the necessarily be necessary be needed for a that that not be necessary to show clearly qualified and I just think the McDonald Douglas framework and all of the cases that followed that. I think this fits into that in my in our that's our position that that this was a valid and legitimate reason that consideration being what it was and looked at as a whole and I think that's what the lower court found was that in looking as as a whole it was reasonable for Dr. Johnson to to think that he was better qualified for that purpose. All right. Thank you. Thank you. Your Honor. Thank you much. All right. Mr. Loving back to to answer your quick question, Judge Higgins. I did not find a case that would support their non-legitimate non-explanatory reasons. Most of the cases I came across dealt with an applicant lacking certain skill or qualification or just not being a good fit of some sort that could be supported. Like I said earlier, you have some people who are great on paper, but are just a training work as employees. So I've never come across. I do not see any cases that would support residency and potential retirement as a reason not to hire difficult without cases saying the opposite. I mean a percent of superintendents got to want a principal to stay. How long will they stay? And they could say I want you within five minutes of the school because they're shootings. They come up quickly. So those could be you heard me focus more on wow head-to-head. Isn't there just an issue of fact? Yeah, I think there is an issue of fact, but to your point a five-minute conversation between the superintendent and my client could have addressed those issues. He could have asked her. Hey, you've been doing this for a while. How long are you going to be there? I want someone to be there long-term. They didn't even meet. There was no discussion. Hey, I got some concerns of you living in Catahoula Parish. They didn't meet. They didn't discuss it. He just unilaterally in his mind thought that this is a concern and I'm going to act on it. Now another point that I want to flesh out is council opposite discussed some Department of Education irregularities. That information is not. In evidence. Now when I say that you have the testimony of dr. Johnson fleshing it out, but the whole ordeal was memorialized and I can tell you testing irregularities and like she pointed out there was no cheating. You had situations like instructions not being read properly and students not proposing Council said there was no finding of wrong. There was no wrongdoing. She didn't say dr. Johnson. So I just want a little bit more. So it's not in evidence and opposing Council's admitted. It didn't and that's correct. That's correct on her and as for school discipline, my client changed the policy. Typically when a child gets in trouble, the rule was to send him or her home a child not in school is a child not learning. So she changed the policy. She had a rule of identifying problem. Children's or children early. She would call a meeting with the children with the parents children and the child get them to sign a contract outlining the expectations. And as for punishment, the child would have would not be proud of school or what would stay later for additional instruction. And as a result. Discipline went down. As a result testing went up. I commend my client for doing something like that because we're talking about a poor black school district of nearly 90% black and poor and I'm not making this up dr. JJ has these numbers. It's common knowledge that black males are disproportionately quite a school as opposed to what about her focus more than that. Dr. Applicants Masters in leadership that distinguished him clearly more qualified not even effectively. I just think that is not a valid reason. School changes my client finished in the early 70s and got some additional training. Now the quickens have changed. I'll submit to you that this master's degree that he got with this special concentration. She has it. She has it already. She lived it. She's lived it. She has it. What's her most significant? Certification extra education for the purposes of principle masters plus 30. Her master's plus 30. It was that well, she has undergraduate degree. I think she got an elementary education. You go to Massachusetts. She went to got a master's degree. I forget exactly but I notated in brief and notated in the 30 hours of training. So I submit to you her training and experience Trump's his degree that he got weeks before being selected. Weeks before being selected at the time of he was so new that the Department of Education website had not yet updated his record. That's how I knew he was. So I know he was. So I just submit to you that there are there is a genuine issue material fact that should preclude some rejudgment. This matter should be reversed and for the proceedings to take place at the district court level. All right. Thank you. Thank you very much. Council for presenting the case case will be submitted.